***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pretrial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. Defendant is a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff has been employed by defendant at its facility in Plymouth, North Carolina, from 25 April 1966 to present.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven month period, as required by N.C. Gen. Stat. § 97-57.
5. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff has worked for defendant for 33 years as pipe fitter and hydraulic mechanic. He was exposed to asbestos dust from the brake linings particularly when using an air hose to blow out dust from the brakes. The air would be so thick with asbestos dust that he describes it as being like snow. He also removed and replaced gaskets from pipes which contained asbestos. He typically scraped and ground off the asbestos gaskets which created a fine dust. He also had to knock off asbestos insulation from piping and valves during construction and repair projects. He did not wear any respiratory protection at all until the mid-eighties when he started using a dust mask.
7. Defendant stipulated that plaintiff does suffer from an occupational disease, asbestosis: further, that he was diagnosed with asbestosis on 5 December 1997 by Dr. Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these and other diagnosing medical records were stipulated into evidence for consideration by the Deputy Commissioner.
8. Plaintiff's income 52 weeks prior to his diagnosis in 1997 was $57,307.84, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year, which is $512.00. Plaintiff's income is also sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the year 2000, in which the Deputy Commissioner entered the first Order of Removal in this case, which is $588.00.
9. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and should the claim be found compensable, the parties agreed by compromise that defendant will pay a penalty of 5% of all compensation, exclusive of medical compensation. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
11. The parties further agreed that should the undersigned determine N.C. Gen. Stat. § 97-60 through § 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
12. The parties submitted for consideration the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. D. Allen Hayes
c. Dr. W. Stuart Hartley
d. Dr. Fred Dula
e. Dr. L. C. Rao
f. Dr. Phillip Lucas
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant-employer.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant-employer, Weyerhaeuser Company.
3. Plaintiff has been employed by defendant at its facility in Plymouth, North Carolina, from 25 April 1966 until the present. Plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months during his employment with defendant.
4. Plaintiff has been employed by defendant as a pipe fitter and hydraulic mechanic since 1966. He was primarily exposed to asbestos when using an air hose to blow out dust from brake linings. He also removed and replaced gaskets from pipes which contained asbestos. He typically scraped and ground of the asbestos gaskets creating a fine dust. He also removed asbestos insulation from piping and valves during construction and repair projects. Plaintiff believes he was exposed to asbestos dust in these manners approximately one day per week and during shut downs for as much as a month at a time. Plaintiff stated that asbestos insulation is still present in the plant, and is removed on occasion by removal teams.
5. On 29 July 1997, plaintiff's CT scan was interpreted by radiologist Dr. W. Stuart Hartley of Charlotte Radiology Diagnostic Imaging Center. Dr. Hartley found early minimal areas of septal thickening and parenchymal bands at the lung bases consistent with early interstitial fibrosis, along with biapical scarring. Dr. Hartley concluded that plaintiff suffered from asbestos pleural disease.
6. Plaintiff was examined by Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University on 5 December 1997. It was the opinion of Dr. Darcey that plaintiff suffers from asbestosis and asbestos related pleural changes. Dr. Darcey recommended that plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray, because further deterioration in pulmonary function can occur even after exposure has ceased. Dr. Darcey further recommended that plaintiff avoid any further exposure to asbestos dust and that plaintiff would benefit from respiratory protection.
7. A CT scan and chest x-ray dated 30 October 1999, were interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. Dr. Dula found extensive plaque formation on the chest walls and diaphragms bilaterally. In addition, there was interstitial changes in both lung bases including short, thickened interlobular septal lines extending to the pleural surfaces, and parenchymal bands. Dr. Dula opined that his findings were "entirely consistent with asbestosis."
8. Dr. L. C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the chest x-ray dated October 30, 1999. Dr. Rao found irregular and rounded opacities present in the lower, middle and upper lung zones bilaterally, and circumscribed chest wall pleural thickening on the left with pleural calcification of the chest wall pleura on the left. Dr. Rao concluded that in the presence of a significant exposure to asbestos dust, these findings are consistent with the diagnosis of asbestosis associated pleural fibrosis of the left chest wall with calcification.
9. Dr. Phillip H. Lucas, a radiologist and NIOSH B-reader, reviewed the chest x-ray dated October 30, 1999. His opinion is that there are bilateral interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
10. Dr. D. Allen Hayes, a pulmonologist and B-Reader who was the examining physician of the Advisory Medical Committee of the North Carolina Industrial Commission, examined plaintiff at the request of the Commission on 30 July 1999. Dr. Hayes conducted a full physical evaluation, performed a pulmonary function study, blood test, electrocardiogram, and chest x-rays, and reviewed other medical records including the CT scan report from Dr. Hartley. It was his conclusion that plaintiff has early parenchymal pulmonary fibrosis (asbestosis) and asbestos-associated pleural plaques. Dr. Hayes recommends that plaintiff not continue to be exposed to asbestos fiber and that he be re-evaluated by the Advisory Medical Committee in 12 months. Dr. Brian A. Boehlecke, a reviewing physician, and Dr. H. F. Eason, the Chairman of the Advisory Medical Committee, reviewed and concurred with Dr. Hayes' examination findings.
11. Defendant stipulates and the Full Commission finds that plaintiff suffers from asbestosis and asbestos related pleural disease as a result of his asbestos exposure while employed by defendant. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further medical monitoring is reasonably necessary due to plaintiff's increased risk of developing lung and other asbestos related cancers.
12. Based upon the evidence of record, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff must be ordered removed from any occupational exposure to asbestos for the remainder of his employment.
13. Plaintiff's average weekly wage in 1997 was $1,102.07, entitling him to the maximum workers' compensation rate of $588.00 in effect during the year 2000, when the initial Order of Removal was entered by the Deputy Commissioner.
14. The provisions of N.C. Gen. Stat. §§ 97-60 et seq. are not unconstitutional.
15. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease while in the employment of the defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the parties have stipulated that plaintiff has asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesiaand Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The record contains plaintiff's average weekly wages for 1997, the year of his diagnosis, but does not provide plaintiff's average weekly wage for 2000, the year the Deputy Commissioner issued the Order of Removal. However, plaintiff's wages in 1997 are such that the calculation of his compensation reaches the maximum allowed by statute for the year 2000, which was $588.00. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00 per week. N.C. Gen. Stat. § 97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25, § 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1et seq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following the second and third examinations and reports as required under N.C. Gen. Stat. § 97-61 et seq.
Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from further exposure to asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation at the rate of $588.00 per week for 104 weeks as a result of his admitted contraction of asbestosis, and asbestos-related plural disease while employed by defendant, commencing on 30 August 2000, the date of the initial Order of Removal entered by Deputy Commissioner Garner. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of $29.40 (constituting 5% of the weekly compensation due as per agreement of the parties) to plaintiff which shall also be paid in a lump sum for the 104 weeks past benefit due in paragraph 1 above. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5% entitling plaintiff to a total worker's compensation rate of $617.40. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the ___ day of July, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER